**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| LEYLEEN LILITH AQUINO,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN J. SCRUGGS, et al.,<br><br>Defendants. | Civil Action No.: PX-24-3585 |

**MEMORANDUM OPINION**

Plaintiff Leyleen Lilith Aquino, a Maryland state prisoner, filed suit alleging that Defendants had violated her First, Eighth, and Fourteenth Amendment rights arising from series of events surrounding the conditions of her imprisonment. ECF No. 1. Defendants Centurion of Maryland, LLC, YesCare Corp.,[1] Angela Matthews, and Marcella Mitchell ("The Medical Defendants") move to dismiss or alternatively for summary judgment in their favor. ECF Nos. 35, 36. Defendants Maryland Division of Correction ("DOC"); Secretary Carolyn J. Scruggs; Majors Donald Gallagher, and Matthew Mercer; Captains Lucas Foxwell, Shakia Waters, Tracie Purnell, and Daniel Price; Lieutenants Jeffrey Kestler, William Clayton, Derrick Houston, Richard Stigill, and Walter Donoway; Correctional Officers Tyrann Harris, Jessica M. ("JM") Lewis, Jessica N. ("JN") Lewis, Tamara Floyd, Trace Adams, Scott Ness, David Widener, Steven Toussaint, Perrisha Cottman, Adrion Christopher, and Michael Collins; Case Managers Evan Lane and Danielle Brown; Facility Manager Matthew Mitchell; Deputy Secretary Annie Harvey; Commissioner J. Philip Morgan; and Warden William Bailey ("State Defendants") move to dismiss or alternatively for summary judgment in their favor (ECF Nos. 46 & 49); and June

[1] This case is stayed as to Defendant YesCare Corp. pursuant to an ongoing bankruptcy in the Middle District of Florida. *See* ECF No. 70. Accordingly, the Court addresses the propriety of relief solely as to Defendants Angela Matthews and Marcella Mitchell ("the YesCare Defendants").

Brittingham solely moves for dismissal. ECF No. 66. Aquino opposes all dispositive relief and separately moves for sanctions[2] and for the appointment of counsel. ECF Nos. 62 & 72.

A hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2025). For the reasons discussed below, Defendants' motions will be granted.

## I. Background

The facts are construed in the light most favorable to Aquino. The Court organizes the relevant facts as did Aquino, according to the eight claims articulated in the verified Complaint. As to the first claim, Aquino avers that on February 16, 2023, Aquino, a transgender prisoner who identifies as a woman, transferred to Eastern Correctional Institution ("ECI"). ECF No. 1 at 4. Aquino faced immediate threats from her cellmate and looked to the prison for protection. *Id.* at 5. Instead, she received a disciplinary infraction for refusing the assigned housing. *Id.* The hearing on that infraction was set for the following day, but once Aquino appeared, the hearing was moved to another date. *Id.* Corrections Officer Collins escorted Aquino back to her cell. According to the Complaint, Collins followed Aquino into the cell, "pushed her to the wall, pulled her orange 'dis-seg' jumper down, and sodomized her." ECF No. 1 at 5. Contemporaneous video footage, however, shows instead that Collins merely escorted Aquino to the cell, and once at the cell door, bent down and removed Aquino's handcuffs. ECF No. 46-4. Officer Collins did not enter the cell after Aquino or otherwise touch her in an inappropriate way. *Id.* *See also* ECF No. 54 at 7. Notably, Defendants offered Aquino an opportunity to view the video evidence, but she

[2] Aquino also asks the Court to sanction defense counsel for failing to mark filings as legal mail which, in turn, prompted prison staff to inspect the mail outside Aquino's presence. ECF No. 62 at 2. Although Aquino does not specify which counsel she believes is responsible for the error, the date stamp on the envelope in which she mailed her motion (ECF No. 62-1), suggests that she is referring to the State Defendants' counsel. The Court denies the motion because Aquino has not demonstrated that any claimed error warrants sanctions under Federal Rule of Civil Procedure 11.

refused, claiming that she wanted to watch the video with her lawyer, even though she does not have a lawyer in this matter. ECF No. 49-1.

Immediately after, Aquino swallowed a razorblade along with several ibuprofen tablets, and passed out. ECF No. 1 at 5-6. Officers discovered Aquino and transported her to Tidal Health Hospital on February 18, 2023. *Id.* at 6. Aquino reported the rape to the paramedics and hospital police chief, as well as to Captains Purnell and Waters. *Id.* The captains refused to give Aquino a forensic examination but collected her clothing in a biohazard bag. ECF No. 54 at 7; ECF No. 1 at 6. The Complaint also surmises that the rape allegation "would have been" reported to Warden Bailey and Chief of Security, Matthew Mitchell. ECF No. 1 at 5. Based on these events, Aquino contends that she had been subjected to cruel and unusual punishment, in violation of the Eighth Amendment, and denied due process under the Fourteenth Amendment.

In the second claim, Aquino avers that the State Defendants denied her access to courts in violation of her First Amendment rights, and "unlawfully" disposed of her property. ECF No. 1 at 7. She particularly contends that after Corrections Officer JN Lewis ordered her to pack her belongings in preparation for a transfer, Aquino placed legal papers and the only copy of her novel in one of four boxes. Corrections Officer Christopher took custody of the boxes for inventory, but when Aquino's transfer fell through, Christopher returned only three boxes, and the books and her novel were missing. *Id.* at 8-9. Without her legal materials, says Aquino, she cannot pursue her criminal postconviction proceedings. *Id.* at 9.

For the third claim, Aquino raises constitutional challenges to the denial of gender confirmation surgery and of her request to transfer to a women's prison. ECF No. 1 at 9. Aquino attests that she has long identified as transgender and is deeply frustrated with passive hormone therapy. *Id.* at 10. She has asked for the surgery but it has yet to be approved. Although YesCare,

as the relevant contract provider, has no record of the request, ECF No. 35-2 at ¶ 6, the files do reflect that Aquino had asked Dr. Zachary Berger in March of 2023 to be evaluated for bottom surgery and facial feminization surgery in the future. ECF No. 35-6 at 11.

The fourth claim challenges the legality of Defendants' denial in June of 2024 of Aquino's request to be assigned an administrative segregation observation area (ASOA) position. ECF No. 1 at 11. Aquino was denied the request because her transgender status adversely affects her Prison Rape Elimination Act (PREA) classification which, in turn, disqualified her for the ASOA spot. *Id.* Brittingham also refused to give Aquino a tutoring job on the same basis. *Id.* Aquino maintains that she was denied due process and was the victim of discrimination under Title VII of the Civil Rights Act of 1964.

The fifth claim raises due process challenges to two events. The first took place on July 3, 2023, when a nurse refused to provide Aquino her hormone therapy. Aquino and the nurse began to argue, prompting Nurse Matthews to intervene. ECF No. 1 at 12. Records confirm that because of a short-lived administrative error, Aquino missed one of her three medications on one occasion. ECF No. 35-8 at ¶¶ 6-7. Aquino further takes issue with Nurse Matthews having instructed the junior nurse not to provide Aquino her name, which Aquino wanted so she could file a formal complaint. ECF No. 1 at 12. Matthews confirms that for security purposes, inmates are not given the full names of staff members. ECF No. 35-8 at ¶ 5.

When Aquino returned from her appointment, Captain Foxwell, Captain Waters, and Lieutenant Houston placed Aquino in disciplinary segregation for allegedly having threatened Matthews, although Aquino received no formal infraction. ECF No. 1 at 12. Further, Aquino was placed with an aggressive cellmate, prompting her to swallow a razorblade. Aquino admitted to

prison psychiatrist, Dr. Yvette Kovner, that she harmed herself because she knew it would cause her to be removed from that cell. ECF No. 35-8 at ¶ 8; ECF No. 35-4 at 11.

The second challenged incident involved a disciplinary infraction lodged against Aquino for having a knife in her cell, even though her cellmate had admitted the knife was his. ECF No. 1 at 13. Corrections Officer JM Lewis commanded Corrections Officer Adams to file infractions against the cellmate and Aquino. *Id.* Lieutenant Price apparently also "pressured" Aquino to write a statement about the incident, but she refused; so Price moved Aquino to administrative segregation. *Id.*; ECF No. 1-16. The next morning, Lieutenant Kestler placed Aquino in the most restrictive section of disciplinary segregation, where she could not contact anyone. ECF No. 1 at 13. Although the infraction ultimately was dismissed, Aquino attempted suicide again and was moved to suicide watch in the interim. *Id.*

Claim six avers that Defendants denied Aquino the right to free exercise of religion when officers denied her access to Sunday services in December 2023 through January 2024. Lieutenant Houston and Correctional Officer JM Lewis refused to open Aquino's cell door, preventing her from attending services. ECF No. 1 at 14. Aquino filed a grievance against the officers and tried to discuss the issue with Lieutenant Waters to no avail. ECF No. 1 at 14; ECF No. 1-4.

For the seventh claim, Aquino avers that Defendants denied her adequate medical attention with deliberate indifference. The Complaint describes difficulties with attending her endocrinology appointment in April 2023 because of failures to submit necessary paperwork and delay in transport. ECF No. 1 at 15. *See also* ECF No. 35-9 at ¶ 5-6 (attesting to an inadvertent failure to send the provider necessary lab results). Aquino further faults Captain Mercer for assigning two male officers to escort Aquino who would not let her undress in private. ECF No.

1 at 15; ECF No. 35-6 at 11. Ultimately, Aquino's doctor could not advise on a more effective form of hormone therapy but promised to be in touch once he received the lab results. *Id.*

For the eighth and final claim, titled "harassment, death threats/discrimination," Aquino faults Corrections Officer Floyd for having threatened Aquino that if she kept "writing [her]ARPs," the officer would open the cell door and do to Aquino what her parents "should've done a long time ago." ECF No. 1 at 16. Aquino, in turn, filed another grievance documenting Officer Floyd's threat and separately reported the incident to the psychology department. *Id.*; ECF No. 1-8. Shortly after, on January 4, 2024, Corrections Officer Cottman refused Aquino access to the law library. ECF No. 1 at 16.

As relief, Aquino seeks monetary damages, gender confirmation surgery, and transfer to a women's prison. ECF No. 1 at 17.

## II. Standard of Review

All Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and all but Defendant Brittingham move alternatively for summary judgment in their favor. When reviewing a motion to dismiss brought pursuant to Rule 12(b)(6), the Court accepts the well-pleaded allegations as true and favorably to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "However, conclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'" *E.E.O.C. v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

Although pro se pleadings are construed generously to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted)). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009).

Motions for alternative relief implicate the Court's discretion under Rule 12(d) to decide the motion as one for summary judgment. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, Civ. No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Defendants have submitted materials beyond the pleadings, putting Aquino on notice that the Court may treat the motions as ones for summary judgment. Summary judgment is proper where no genuine dispute of material fact exists, thus entitling the movant to "judgment as a matter

of law." Fed. R. Civ. P. 56(a). The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [her] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

Aquino opposes summary judgment because her imprisonment makes it difficult to "investigate and discover" relevant evidence. ECF No. 42-2. Summary judgment is disfavored where "the nonmoving party has not had the opportunity to discover information that is essential to [their] opposition.'" *Tyree v. United States*, 642 F. App'x 228, 230 (4th Cir. 2016) (quoting *Nguyen v. CAN Corp*., 44 F.3d 234, 242 (4th Cir. 1995)). The Court should refrain from reaching "premature summary judgment motions" where further discovery would aid in the decisional process. *McCray v. Md. Dep't of Transp., Md. Transit Admin*., 741 F.3d 480, 484 (4th Cir. 2014) (quoting *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt*., 721 F.3d 264, 281 (4th Cir. 2013)). *See also Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014). That said, if the evidence sought in discovery "would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment," then the Court need not permit discovery to

proceed. *Ingle ex rel. Est. of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006) (quoting *Strag v. Bd. of Trs.*, 55 F.3d 943, 954 (4th Cir. 1995)). And "vague assertions as to matters upon which the district court should have allowed discovery" cannot support a Rule 56(d) motion. *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995).

Aquino, for her part, argues only that discovery would be helpful to ascertain applicable Department of Public Safety and Correctional Services policies and procedures, but does not explain how any such procedures would create a genuine and triable issue for any of the claims. ECF No. 42-2. Accordingly, the Court sees no impediment to reaching the motions as ones for summary judgment, where appropriate. *See, e.g., Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005). But if the Complaint plainly fails to state a plausible claim, the Court will treat the motion as one to dismiss.

With these standards in mind, the Court turns to the motions.

## III. Analysis

### A. Dismissal of Defendants Against Whom No Allegations Are Pleaded

State Defendants first move to dismiss those Defendants for which no allegations are averred; namely Scruggs, Morgan, Harvey, Gallagher, Clayton, Harris, Ness, Widener, Stigill, Donoway, and Toussaint. ECF No. 46-1 at 16. Likewise, Centurion moves for dismissal on the same grounds. ECF No. 36-2. Captain Purnell is the only of the named defendants for whom certain facts are pleaded, so the Court will not dismiss her on this basis. The rest are dismissed.

Defendant Division of Correction (DOC) must also be dismissed because it is not a "person" capable of being sued for a constitutional violation pursuant to 42 U.S.C. § 1983. ECF No. 46-1 at 17. A claim brought pursuant to § 1983 may proceed only upon some facts showing a person acting under color of state law deprived the plaintiff of rights, privileges or immunities

secured by the Constitution or federal law. *West v. Atkins*, 487 U.S. 42, 48 (1988). DOC is an agency, not a "person." So, it cannot be sued under § 1983. The Complaint against DOC is dismissed.

Next as to Defendants Warden Bailey and Chief of Security Matthew Mitchell,[3] because the Complaint makes no individual claims against either supervisor, they too must be dismissed. Their mere supervision of others who allegedly committed constitutional violations is insufficient. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). The claim against a supervisor survives only if some facts make plausible that the named supervisor knew the subordinates' acts or omissions unreasonably risked constitutional injury and the supervisor responded with deliberate indifference or tacit authorization of their subordinates' bad acts. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The singular allegation that Bailey and Mitchell "would have" known about Aquino's rape complaint against Officer Collins is too barebones to make plausible the claim. Thus, Bailey and Mitchell are also dismissed from suit.[4]

### B. Dismissal of Insufficiently Pleaded Claims

#### i. Claims 2 and 8: Access to Courts

Turning next to the challenges premised on a deprivation of access to the courts, they fail as a matter of law. Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). However, a prisoner is entitled only to those tools necessary to "attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996). "Ultimately, a prisoner wishing

---

[3] Defendants also identify Matthew Mitchell as "Facilities Manager." ECF No. 46-1 at 1. In any event, no individual allegations make plausible any liability as a supervisor, regardless of his title.
[4] The Court also recognizes that to the extent Aquino sues the state agencies or their agents in their official capacities, the suits are barred under the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

to establish an unconstitutional burden on [her] right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355). The Complaint as to Corrections Officers JN Lewis and Christopher merely alleges that they failed to return to Aquino law books; and that this, in turn, made it "impossible" for her to pursue state post-conviction relief. But Aquino offers no detail as to how or why she could not have litigated nonfrivolous arguments without her law books. *See Lewis*, 518 U.S. at 348-51. The barebones claim simply does not survive challenge.[5] Likewise, denial of one law library visit, without more, cannot make plausible the claim. It, too, is dismissed.

**ii. Claims 3, 4, 5 and 7: Due Process Violations**

Next as to claims 3 through 5, Aquino avers that the State Defendants' failure to transfer her to a women's prison and the denial of two job assignments deprives her of due process. Generally, prisoners maintain no constitutional entitlement to participate in any specific programs or to choose housing, absent a showing of significant hardship. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of [her] liberty to the extent that the State may confine [her] and subject [her] to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976); s*ee also Sandin v. Conner*, 515 U.S. 472, 493 (1995) (requiring an atypical and significant hardship as prerequisite to creation of a constitutionally protected liberty interest).

[5] To the extent Aquino alleges the loss of her property makes plausible a due process claim, Aquino fails to show a lack of access to an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U.S. 527, 540 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (extending Parratt to intentional deprivations of property). Nor could she because she always maintains the right to seek damages or injunctive relief in state court for deprivation of her personal property. *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).

Aquino does not allege that she has endured an *atypical* hardship arising from the denial of two jobs and a prisoner transfer. Although perhaps a transgender prisoner could successfully make the claim depending on the facts of any given denial, Aquino does not.[6] Nor can she plausibly aver the placement in administrative segregation alone makes plausible the claim. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983) (holding that administrative segregation is part of the ordinary incidents of prison life).

Part of claim 7 concerns Aquino's disciplinary charge for possessing a knife that her cellmate admitted was his. ECF No. 1 at 13. The Court discerns no due process error. Mere placement in a high security segregation after a knife was found in a prison cell does not amount to a constitutional violation. Especially where, as here, Aquino concedes that the infraction has been dismissed against her. ECF No. at 13. That the incident also resulted in her placement on suicide watch is sad, but it does not make any claim plausible against Corrections Officer Adams, Lieutenant Kesler or any other officer. The claim is dismissed.

**iii. Claim 6: Denial of First Amendment Free Exercise of Religion**

Claim six articulates a First Amendment claim arising from officers' refusal to let Aquino attend Sunday services in December 2023 and January 2024. The Free Exercise Clause "protects against laws that discriminate against or among religious beliefs or that restrict certain practices because of their religious conduct." *Alive Church of the Nazarene, Inc. v. Prince William Cnty., Virginia*, 59 F.4th 92, 108 (4th Cir. 2023). To violate the Free Exercise Clause, a law, regulation, or government policy must "burden . . . religious exercise." *Fulton v. City of Philadelphia*, 593

[6] Aquino's offhanded reference to Title VII without any articulation of how the nondiscrimination statute applies to denial of her requested tutoring position will not save the claim. *See generally Williams v. Meese*, 926 F.2d 994 (10th Cir. 1991). *But see Baker v. McNeil Island Corr. Ctr.*, 859 F.2d 124 (9th Cir. 1988) (acknowledging application of Title VII to employment opportunities available on work release). Again, this is not to say that Title VII conclusively does not apply to employment denials in a carceral setting. Rather, Aquino's thin averments do not make plausible that she was denied an employment opportunity by an employer covered under Title VII in a manner giving rise to an inference of gender-based discrimination.

U.S. 522, 532 (2021). This protection extends to prisoners, *Cruz v. Beto*, 405 U.S. 319, 322 (1972), provided that such exercise is "not inconsistent with [their] status as a prisoner or with the legitimate penological objectives of the corrections system." *Heyer v. United States Bureau of Prisons*, 984 F.3d 347, 355 (4th Cir. 2021) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). To state a claim for a violation of the Free Exercise Clause, some facts must make plausible that (1) the prisoner held a sincere religious belief; and (2) a prison practice or policy "substantially burden[ed]" the inmate's ability to practice her religion. *Wilcox v. Brown*, 877 F.3d 161, 168 (4th Cir. 2017). "A practice or policy places a substantial burden on a person's religious exercise when it 'put[s] substantial pressure on an adherent to modify [their] behavior and to violate [their] beliefs.'" *Hammock v. Watts*, 146 F.4th 349, 365 (4th Cir. 2025) (quoting *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018)). If the inmate can establish a sincere religious belief and a policy that substantially burdens the inmate's ability to practice her religion, then the burden shifts to the prison to "offer[ ] penological interests that justify its infringement on free exercise rights." *Id.*

When construing the Complaint most favorably to Aquino, she pleads no facts making plausible her own sincerely held religious beliefs. But even if she did, simply missing Sunday services does not substantially burden her ability to practice her religion. Certainly, without additional facts to show that a prison practice or policy thwarted Aquino's ability to practice Christianity, the claim fails.[7]

[7] To the extent Aquino asserts a companion claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5, the claim fails because Aquino seeks compensatory damages which are unavailable under the statute. *See Sossamon v. Texas*, 563 U.S. 277, 285–86 (2011) (prohibiting damages claims against state officials in their official capacity); *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009) (same for individual capacity suits)).

### iv. Claim 8: Verbal Threats

Lastly, as to claim 8, when viewing the Complaint facts most favorably to Aquino, Corrections Officer Floyd's threat to do to Aquino what "her parents should have done" does not make plausible a constitutional violation. *See Carter v. Morris*, 164 F.3d 215, 219, n.3 (4th Cir. 1999) (rejecting use of racial epithets as a basis for constitutional claim). Although certainly not condoned, the Court cannot plausibly construe this incident as stating a legally cognizable cause of action. *See Pink v. Lester*, 52 F.3d 73, 75 (1995) ("[N]ot all undesirable behavior by state actors is unconstitutional.").

Nor does the Complaint make plausible any actionable claim sounding in retaliation that would infringe on Aquino's right to petition for redress of grievances. "A First Amendment retaliation claim under § 1983 consists of three elements: (1) the plaintiff engaged in constitutionally protected First Amendment activity, (2) the defendant took an action that adversely affected that protected activity, and (3) there was a causal relationship between the plaintiff's protected activity and the defendant'[s] conduct. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 537 (4th Cir. 2017). Although Corrections Officer Cottman may have denied Aquino access to the law library for a day, and Corrections Officer Floyd may have expressed an intent to disadvantage Aquino because she is a prolific grievance writer, no facts connect the two actions; and even if there had been some connection, a one-day denial of access to the law library, without more, does not amount to a constitutional deprivation. Claim 8 is dismissed.

## C. Summary Judgment

Turning to the claims sounding in Eighth Amendment violations, the Court reaches those on summary judgment.

**i. Claim 1: Asserted Sexual Assault**

Claim 1 concerns Corrections Officer Collins' sexual assaultive conduct that allegedly amounts to cruel and unusual punishment. The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Boone v. Stallings*, 583 F. App'x 174, 176 (4th Cir. 2014) (per curiam) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). An officer's sexual abuse of an inmate undoubtedly satisfies an Eighth Amendment claim because

> [s]exual abuse has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society. Nor does it comport with contemporary standards of decency. . . . . A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or to humiliate the inmate, violates the Eighth Amendment. . . . . And even if contact between an officer and an inmate's genitalia was initially justified, if the officer finds no contraband, continued sexual contact may be actionable. . . .

*Johnson v. Robinette*, 105 F.4th 99, 122 (4th Cir. 2024) (internal quotation marks and citations omitted). Indeed, "[t]here can be little doubt that sexual abuse is repugnant to contemporary standards of decency, and that allegations of sexual abuse can amount to an Eighth Amendment violation." *Jackson v. Holley*, 666 F. App'x 242, 244 (4th Cir. 2016); *see also Woodford v. Ngo*, 548 U.S. 81, 118 (2006) (Stevens, J., dissenting) ("[T]hose inmates who are sexually assaulted by guards . . . have suffered grave deprivations of their Eighth Amendment rights).

The problem for Aquino is that although she swears the assault took place, contemporaneous video evidence, even when construed most favorably to her, conclusively demonstrates the opposite. *See Brooks v. Johnson*, 924 F.3d 104, 111 (4th Cir. 2019). Importantly, where, "opposing parties tell two different stories," and one side is supported by video evidence such that "no reasonable jury could believe" the competing version, the court "should not adopt" that which is contradicted by the video evidence. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

Instead, the Court must "view[] the facts in the light depicted by the videotape." *Id.* at 381; *see also Sawyer v. Asbury*, 537 F. App'x. 283, 291 (4th Cir. 2013). Because the footage clearly depicts Corrections Officer Collins escorting Aquino to and from her cell without ever entering the cell or touching Aquino in a sexual manner, no reasonable jury could conclude that Collins assaulted Aquino. Nor does Aquino's objection to the video evidence as not having been subject to "forensic evaluation" generate a genuine dispute of fact. ECF No. 56 at 3. Where the video evidence so clearly undermines the facts according to Aquino such that no reasonable juror could find in her favor, the claim cannot proceed. *See Witt v. West Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011). For the same reason, no due process claim depending on such assault could survive. Summary judgment is granted in favor of Collins, Purnell, and Waters on claim 1.

**ii. Claims 3, 5 and 7: Failure to Provide Adequate Medical Care**

Aquino raises multiple issues pertaining to her medical care. In claim 3, she avers denial of gender confirmation surgery; in claim 5, she alleges that Yes Care Defendants denied her hormones causing her to attempt suicide; and, in claim 7, she asserts that Nurse Marcella Mitchell failed to send lab results which delayed Aquino's evaluation for hormone injections.

An Eighth Amendment claim for denial of medical care shall proceed where the facts show that Defendants delayed or denied necessary medical care with deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan,* 511 U.S. 825, 834-37 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*,

825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241).

Proof of an objectively serious medical condition does not end the inquiry. The plaintiff must also demonstrate that defendants exhibited "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

YesCare Defendants do not contest that Aquino's hormone therapy constitutes an objectively serious medical need. ECF No. 35-1 at 16. Instead, they rightly argue that Nurse Matthews did not delay or deny Aquino medical care, or put her at risk simply by intervening in the altercation with the younger nurse. Nor does anything suggest that Aquino discussed her desire for gender confirmation surgery with Matthews or any other named defendant. Lastly, to the extent Aquino sought to hold YesCare Defendants liable for the delay in receiving her medications on July 3, 2023, nothing establishes that either Defendant was personally responsible for the error. Thus, because no genuine and material factual dispute permits the claim to proceed, Matthews and Mitchell are entitled to judgment in their favor.[8]

---

[8] Separately, the State Defendants contend that dismissal against Officer Mercer is warranted for any failures arising from not securing female escorts for Aquino's appointment. ECF No. 46-1 at 32. The mere dereliction of providing female guards does not demonstrate Mercer's "subjective recklessness" in the face of the serious medical condition.

## IV. Conclusion

For the foregoing reasons, Defendants' Motions are granted. Judgment is entered in favor of Defendants Collins, Purnell, and Waters on Count 1 and Defendants Matthews and Mitchell on Counts 3, 5 and 7. The Complaint is otherwise dismissed. Because the case will not proceed, Aquino's Motion to Appoint Counsel (ECF No. 72) will be denied.

A separate Order follows.

9/8/26
Date

/s/
Paula Xinis
United States District Judge

*Farmer,* 511 U.S. at 839-40. The Eighth Amendment claim premised on Aquino's medical appointment cannot survive challenge.